(91 Misc. Rep. 177)

PEOPLE v. ARNSTEIN et al.

(Court of General Sessions, New York County. June, 1915.)

1. CRIMINAL LAW ⬤⟹1073—APPEAL—CERTIFICATE OF REASONABLE DOUBT.

Where an indictment alleged a conspiracy in New York to defraud defendants by means of false representations in the State of Connecticut, letters confirming the false representations and telegrams having been sent from New York to prosecutors in Connecticut, who relied thereon, and an indictment for larceny in the first degree had been held demurrable by three of the four judges of the Court of Appeals, because not showing that the acts charged constituted a felony in Connecticut, and on a second trial the evidence showed that in Connecticut there is no crime denominated as "felony," but all crimes are denominated high crimes and misdemeanors, and the court has a reasonable doubt as to whether the acts charged constituted false pretenses under the laws of Connecticut, which corresponds to the crime of larceny by false pretenses in New York, a certificate of reasonable doubt will be granted.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. § 2730; Dec. Dig. ⬤⟹1073.]

2. CRIMINAL LAW ⬤⟹1073—CERTIFICATE OF REASONABLE DOUBT—WHEN GRANTED.

On an application for a certificate of reasonable doubt, it is not necessary that the judge be satisfied that the judgment will be reversed; but

⬤⟹For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes
155 N.Y.S.—6

it is enough that he be satisfied that a question of law is raised sufficient for the consideration of the appellate tribunals.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. § 2730; Dec. Dig. ☞1073.]

Nicholas Arnstein and others were indicted for grand larceny in the first degree. A demurrer filed by Nicholas Arnstein to the first count of the indictment being sustained, the People appealed to the Appellate Division, which reversed the judgment, and defendant thereupon appealed to the Court of Appeals, which reversed the order of the Appellate Division and sustained the order of the Court of General Sessions, and defendant moves for a certificate of reasonable doubt. Motion granted.

Joseph Du Vivier, Deputy Asst. Dist. Atty., of New York City, for the People.

O'Gorman, Battle & Vandiver, of New York City (Almuth C. Vandiver and John M. Quinn, both of New York City, of counsel), for defendants.

ROSALSKY, J. On the 19th day of January, 1912, the grand jury filed an indictment charging the defendant Arnstein and others with the crime of grand larceny in the first degree. The defendant filed a demurrer to the first count of the indictment, which was sustained by Judge Crain, but leave was granted to the district attorney to resubmit the charge to another grand jury. The people appealed to the Appellate Division, which reversed the judgment of the Court of General Sessions sustaining the demurrer, and the defendant thereupon appealed to the Court of Appeals, which reversed the order of the Appellate Division, and sustained the judgment and order of the Court of General Sessions.

[1] The first count of this indictment charged the defendant Arnstein and others with the crime of grand larceny in the first degree, in that the defendant Arnstein and the other defendants on the 13th day of August, 1911, in the county of New York, entered into a conspiracy for the purpose of fraudulently dealing in copper stock of the Chelan Consolidated Copper Company, and of obtaining by false pretenses the property of the persons to whom they should sell such stock, and that one of such persons was William F. Shinks, of Springfield, Mass.; that in pursuance of the conspiracy the defendant Arnstein and the other defendants went to the city of Springfield, in the state of Massachusetts, with intent to cheat and defraud Shinks out of the sum of $15,000; that the defendant Arnstein and the other defendants in Springfield, Mass., made to Shinks the false representations alleged in the indictment, with knowledge of their falsity; that in further pursuance of the conspiracy the defendant Arnstein and the other defendants sent from the county of New York telegrams and letters to Shinks containing certain false representations, with knowledge of their falsity, as alleged in the indictment; and that at the city of Bridgeport, in the state of Connecticut, the defend-

ant Arnstein and the other defendants obtained from Shinks, who relied on the false representations, the sum of $15,000, which the defendant Arnstein and the other defendants appropriated to their own use.

Three of the four judges of the Court of Appeals, who voted to sustain the judgment allowing the demurrer, held that the first count of the indictment was faulty, because it failed to allege that the acts charged against the defendant Arnstein and the other defendants constituted a crime under the laws of the state of New York, and also constituted a crime of a corresponding nature under the laws of the states of Massachusetts and Connecticut. People v. Arnstein, 211 N. Y. 585, 105 N. E. 814.

In order to conform to this decision the district attorney presented the charge against the defendant Arnstein and the other defendants to the grand jury which originally indicted them, and which filed a new indictment against the defendant Arnstein and the other defendants on the 4th day of December, 1914. This indictment alleged that the acts charged against the defendant Arnstein and the other defendants constituted, under the laws of the states of Massachusetts and Connecticut, the crime of false pretenses, and under the laws of the state of New York the crime of larceny by means of false pretenses. This indictment was thereafter transferred to the Supreme Court, and a demurrer was filed by the defendant Arnstein to the first count thereof. Mr. Justice Davis disallowed the demurrer.

The indictment was thereafter transferred by the Supreme Court to the Court of General Sessions, in which court the defendant was duly brought to trial, and he interposed, in addition to the plea of not guilty, a plea of former jeopardy, based upon the ground that Judge Crain did not issue an order granting leave to the district attorney to resubmit the charge against the defendant to the grand jury.

The jury found the defendant guilty of the crime of grand larceny in the first degree, and on his plea of former jeopardy the jury found a verdict for the people. The defendant now moves for a certificate of reasonable doubt upon 30 grounds, of which the only one meriting serious consideration is the sixth, to wit:

"(6) That the crime of false pretenses in the state of Connecticut is not a crime corresponding in nature, character, degree, forfeiture, or punishment with the crime of grand larceny in the first degree in the state of New York, set out in the indictment."

Upon the trial of the defendant the statutes of the state of Connecticut were proved and admitted in evidence, in order to determine whether the crime of false pretenses under those statutes corresponds to the crime of grand larceny by false pretenses under the laws of the state of New York. These statutes (Gen. St. 1902) are as follows:

Section 1415: "Every person who shall, by any false token, pretense, or device, obtain from another any valuable thing, or any leasehold interest, or the performance of any valuable service, with intent to defraud him or any other person; or who shall obtain from another person any valuable thing, or the performance of any valuable service, by means of delivering a check, order, or draft on a third party, purporting to be an order for the payment of

money, when such person knows that the maker is not entitled to draw on the drawee for the sum specified, shall be fined not more than five hundred dollars, or imprisoned not more than three years, or both."

Section 1587: "Punishment by imprisonment, when not otherwise provided, shall be in the jail of the county in which the offense is committed, or in the state prison; but sentences of confinement in the state prison shall be for the period of at least one year, except for violations of the law concerning tramps; and whenever the punishment provided in any statute may be confinement in the state prison for a period less than one year, the court pronouncing judgment may sentence the accused to imprisonment in the jail for not more than one year nor less than forty days."

Section 1578: "No person shall be prosecuted for treason against this state, or for any crime or misdemeanor, of which the punishment is or may be imprisonment in the state prison, except within five years next after the offense shall have been committed; nor shall any person be prosecuted for the violation of any penal law, or for other crime or misdemeanor, except crimes punishable by death or imprisonment in the state prison, but within one year next after the offense shall have been committed; but if the person, against whom an indictment, information, or complaint for any of said offenses shall be brought, shall have fled from, and have resided out of this state, during the period so limited, it may be brought against him at any time, within such period, during which he shall reside in this state, after the commission of the offense; and when any suit, indictment, information, or complaint for any crime, may be brought within any other time than is limited by this section, it shall be brought within such time."

Section 1416: "When any complaint shall be brought before any city or police court for the commission of any offense prohibited in section 1413 in which the value of the goods taken, purloined, secreted, or appropriated, shall not exceed twenty-five dollars, or for the commission of any offense prohibited in section 1415, such court may try the same, and if in its opinion no greater punishment ought to be imposed, may render judgment therein for a fine of not more than fifty dollars, or imprisonment in the county jail not more than six months, or both, subject to the right of the accused to appeal as provided by law in other cases; but if in the opinion of the court a greater punishment should be inflicted, the accused shall be bound over to the next Superior Court having criminal jurisdiction to be held in the county in which the offense was committed, there to answer said complaint."

In People v. Arnstein, 211 N. Y. 585, 588, 105 N. E. 814, 815, Cuddeback, J., said:

"The crime charged against the defendants in the indictment under consideration is grand larceny, a felony, and in my opinion it cannot be sustained on the assumption that the acts committed in Massachusetts and Connecticut constituted only a misdemeanor. It was necessary to show that grand larceny or some crime which corresponds to that offense, by whatever name known in the foreign jurisdiction, had been committed by the defendants to bring the case within the provisions of section 1930, subdivision 1."

In order to determine whether under the laws of the state of Connecticut the crime of false pretenses was a misdemeanor or a felony, the decisions of the Connecticut courts hereinafter mentioned were admitted in evidence.

In State v. Knapp, 6 Conn. 417, 16 Am. Dec. 68, the court said:

"It is therefore my duty to say that the superior court has jurisdiction of high crimes and misdemeanors at common law, and the only question for me now to decide is: Do the facts alleged in the information constitute such an offense? 'High crimes and misdemeanors,' says Russell, 'are such immoral and unlawful acts as are nearly allied and equal in guilt to felony, yet owing to some technical circumstance do not fall within the definition of felony.'

\* \* \* 'The idea of felony,' says Sir William Blackstone, 'is so generally connected with that of capital punishment that we find it hard to separate them; and to this usage the interpretation of the law does now conform.' "

In Fimara v. Garner, 86 Conn. 437, 85 Atl. 671, the court said:

"By it misdemeanors were divided into two grades: Those whose criminality was nearly akin to felony, that is, the more serious misdemeanors; and those of an inferior kind, called petit or simple misdemeanors. High crimes and misdemeanors are the more serious or aggravated misdemeanors; those which are nearly allied and equal in guilt to felony, but do not fall within its definition."

In Ross v. Crofutt, 84 Conn. 374, 80 Atl. 91, Ann. Cas. 1912C, 1295, the court said:

"A high crime is one nearly allied to and equal in guilt to felony, but technically does not fall within its definition."

Mr. Mackett, a member of the Connecticut bar, was called by the defense, who testified that false pretenses is a high crime and misdemeanor, and that it is equivalent in its nature to the crime of larceny by false pretenses under the laws of the state of New York, but is not a felony under the laws of the state of Connecticut, for the reason that under its laws no crime is denominated a felony, and that the crimes of murder, robbery, rape, and burglary are denominated there as high crimes and misdemeanors. He also testified that the crime of false pretenses may be either a high crime and misdemeanor or a simple misdemeanor, dependable upon the action of the magistrate, who, in the first instance, examines the charge of false pretenses against a defendant. He further testified that if the magistrate is of the opinion that any offense prohibited in section 1415, which includes the crime of false pretenses, should be disposed of summarily before him and no greater punishment than six months in the county jail, or a fine not exceeding $50, or both fine and imprisonment, should be imposed, then the magistrate has jurisdiction of the crime, and in that case the crime of false pretenses would be regarded as a simple misdemeanor; but if in the opinion of the magistrate a greater punishment should be inflicted for the crime of false pretenses, the accused shall be held by the magistrate for the superior court, which court has the power to sentence a prisoner for the crime of false pretenses to state prison for a term of three years, or to impose a fine of $500, or to impose both a sentence of three years and a fine of $500, and, if the superior court imposed a state prison sentence, then the crime would be regarded as a high crime and misdemeanor.

In view of the fact that three judges of the Court of Appeals have held that an indictment cannot be sustained on the assumption that the acts committed by the defendant constituted a felony under the laws of the state of New York and only a misdemeanor under the laws of the state of Connecticut, and in view of the further fact that the proof on the trial of the defendant before me established that under the laws of the state of Connecticut there is no crime denominated as a felony, but that all crimes therein are denominated as high crimes and misdemeanors, a question of reasonable doubt is raised in

my mind as to whether the acts charged against the defendant Arnstein constituted the crime of false pretenses under the laws of the state of Connecticut, which corresponds to the crime of larceny by false pretenses under the laws of the state of New York, and I am therefore of the opinion that this question should be settled by the appellate courts.

[2] On an application for a certificate of reasonable doubt, it is not necessary that the judge to whom the application is made should be satisfied that the judgment will be reversed. It is enough if he is satisfied that a question of law is raised sufficient for the consideration of the appellate tribunals. As this gravely important question has not been settled by a majority of the judges of the Court of Appeals, I am of the opinion that a certificate of reasonable doubt should issue, and therefore the motion for a certificate is granted.

The amount of bail will be fixed after hearing both the district attorney and counsel for the defendant.

Motion granted.